IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TALIA CRAIGHEAD, *et al.*,  *

   Plaintiffs,  *

v.  *   Civil Action No. PX-17-595

FULL CITIZENSHIP OF MARYLAND,  *
   INC., *et al.*,

   Defendants.  *
******

**MEMORANDUM OPINION AND ORDER**

Pending before the Court in this wage payment action is the Motion to Certify Class under Federal Rule of Civil Procedure 23 filed by Plaintiffs Talia Craighead, Verenesha Hutchinson, Vernice Headen, and Pamela Ransom. (ECF No. 72.) Plaintiffs, on behalf of themselves and all others similarly situated, have filed this action alleging that Defendant Full Citizenship of Maryland, Inc. ("FCI") and FCI's Executive Director, Defendant Pansy Stancil-Diaz, violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and analogous Maryland law. The matter has been fully briefed, and the Court rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons below, Plaintiffs' Motion is GRANTED.

**I.    Procedural and Factual Background**

This case was the subject of the Court's previous Memorandum Opinion and Order granting conditional certification under the FLSA. As noted in that Opinion, Plaintiffs were employed by FCI, a Maryland corporation, which provides residential, rehabilitative, and vocational training services to adults with cognitive disabilities. Plaintiffs worked as Residential Coordinators, Residential Counselors, Vocational Coordinators, and Vocational Counselors.

ECF No. 72-1 at 1. Plaintiffs group those positions together as "residential and vocational staff," and assert they perform overlapping duties and are subject to the same compensation policies and practices. ECF No. 72-1 at 5.

Plaintiffs initiated this suit on March 1, 2017. ECF No. 1. On August 4, 2017, Plaintiffs' Amended Complaint was filed. ECF No. 34. The parties then engaged in class and jurisdictional discovery. *See* ECF Nos. 27, 61, 63. Following the close of class and jurisdictional discovery, on February 12, 2018, Plaintiffs filed the pending motion, moving for class certification pursuant to Federal Rule of Civil Procedure 23. ECF No. 72.

In their motion, Plaintiffs argue that classwide treatment of this case is efficient and practical to adjudicate the claims of those employees who were subjected to a uniform illegal compensation scheme. The proposed class consists of all persons who were, are, or will be employed by Defendants as residential and vocational staff, who were paid by the hour, and who allegedly were not paid the legal minimum wage and/or overtime wage (one and one-half times their regular hourly rate) for hours worked in excess of 40 in a workweek, from March 1, 2014, through the present. ECF No. 72 at 1. Plaintiffs have provided 65 potential class members who allegedly did not receive their full overtime wages, ECF No. 72-1 at 12–13, and 25 potential class members who allege minimum wage violations, ECF No. 72-1 at 11. Some individual putative class members have both minimum wage and overtime claims. Plaintiffs have also provided a classwide damages summary sheet for approximately 80 individuals who worked as residential and vocational staff. ECF No. 72-19.[1]

---

[1] Several of Plaintiffs' attachments to the motion were filed under seal, most notably payroll records. Where the Court makes reference to information from sealed exhibits, it does so in general terms. Sealed exhibits are cited using the ECF numbers of the notices of filing under seal associated with the exhibits, which are attached to Plaintiffs' motion.

Defendants oppose certification, arguing that Plaintiffs fail to meet the requirements of Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure. For the reasons below, the Court agrees with Plaintiffs and will certify the proposed class.

## II. Legal Standard

Rule 23 of the Federal Rules of Civil Procedure governs class certifications. The Court's analysis begins with a threshold inquiry as to whether the putative class is readily ascertainable. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (citation omitted). A putative class must be readily identifiable without resort to fact-finding; however a class is considered identifiable even if not every class member can be named at the certification stage. *Id.*

With regard to certification, under Rule 23(a), the Court considers whether: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). If Rule 23(a) is satisfied, the Court then considers whether the proposed class falls into one of three enumerated categories set forth in Rule 23(b).

Plaintiffs in this case maintain that certification is appropriate under Rule 23(b)(3), which permits certification where common questions of law or fact predominate over any questions affecting only individual members, and where proceeding as a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3); *see Lienhart v. Dryvit Sys., Inc.* 255 F.3d 138, 146–47 (4th Cir. 2001). Although likelihood of success on the merits does not directly implicate the propriety of class certification, the "rigorous analysis" required to determine whether to certify a class will often incidentally "entail some overlap with the merits

3

of the plaintiff's underlying claim." *Wal Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351–52 (2011); *see Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004).

**III. Discussion**

As an initial matter, the ascertainability requirement is met. The FCI Employee List submitted in connection with this motion demonstrates that indicates that the class is readily identifiable. *See EQT Prod. Co.*, 764 F.3d at 358. The Court now turns to the requirements of Rule 23(a) and 23(b)(3).

**A. Rule 23(a)**

**1. Numerosity**

"Rule 23(a)(1) requires that the purported class would be so large as to make joinder impracticable." *Hoffman v. First Student, Inc.*, Civ. No. AMD 06-1882, 2008 WL 11349801, at *3 (D. Md. Dec. 9, 2008); Fed. R. Civ. P. 23(a)(1). Although absolute numbers do not drive the analysis, *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984), the Court notes that classes smaller than the proposed class here (80 individuals) have been certified in this District. *See Edelen v. Am. Residential Servs., LLC*, Civil Action No. DKC 11-2744, 2013 WL 3816986, at *5 (D. Md. July 22, 2013). Indeed, classes with 25 to 30 members have sufficed to raise the presumption that the numerosity requirement is met. *See id.* (citing *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1997)); *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 770 (D. Md. 2012).

With regard to the impracticability of joinder, the Court considers "the possible geographic disbursal of the claimants, the small size of individual claims, and the inconvenience of trying multiple suits." *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 556 (D. Md. 2006); *see also Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 215 (D. Md. 1997)

(noting "where individual claims are so small as to inhibit an individual from pursuing his own claim, joinder is less likely"). In this case, the small dollar value of many individual claims, coupled with the waste and inconvenience of serial litigation, support the finding that the proposed class meets the numerosity requirement.

Defendants contend that to meet the other Rule 23(a) prongs of commonality and typicality, the putative class must be divided into subclasses which would then defeat numerosity. Defendants more particularly assert that the claims of different categories of FCI employees are too dissimilar to be tried in one class action. For the reasons more fully discussed below, the Court disagrees that any subdivision of the class is necessary, and so numerosity is satisfied.

### 2. Commonality and Typicality

Commonality and typicality under Rules 23(a)(2) and (a)(3) concern whether maintaining a particular class action is economical and whether the class claims are sufficiently interrelated that the "interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Therefore, the analysis of these requirements tends to merge. *Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 499 n.15 (D. Md. 2010). The commonality determination does not require total identity of class claims, but rather looks to whether class members share common factual or legal issues that unify the case. *Hoffman*, 2008 WL 11349801, at *3.

The typicality requirement concerns whether the named plaintiffs' claims are aligned and consistent with those of the class. Fed. R. Civ. P. 23(a)(3). A sufficient relationship must exist between the named plaintiffs' claimed injuries and those of the class, "so that the court may properly attribute a collective nature to the challenged conduct." *Boyd v. Coventry Health Care*

5

*Inc.*, 299 F.R.D. 451, 458 (D. Md. 2014) (quoting *Hewlett*, 185 F.R.D. at 217). A named plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Speaks v. U.S. Tobacco Coop., Inc.*, 324 F.R.D. 112, 136 (E.D.N.C. 2018) (internal quotation marks and citation omitted). When the variation in claims "strikes at the heart" of those claims, the typicality requirement is not met. *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006).

Defendants argue that Plaintiffs fail to meet the commonality and typicality requirements because the class representatives held different positions with dissimilar pay structures as compared to the class and to each other. Defendants argue that named Plaintiffs Craighead, Hutchinson, and Ransom, as "coordinators," are supervisory employees paid on a salary basis and thus exempt from overtime requirements.[2] ECF No. 83 at 2–4, 11–14. Defendants also assert that the job duties of supervisory staff differ in material respects from the remaining class of "counselors." With respect to Headon and non-supervisory class members, FCI further argues that differences in dates and times of employment renders any minimum wage claims incapable of classwide resolution. *See* ECF No. 83 at 20. FCI's arguments are unsupported by the record evidence and fail to defeat class certification.

The evidence so far generated demonstrates that the putative class members all perform substantially similar job duties regardless of job title. The named Plaintiffs affirmed that they assisted intellectually and behaviorally disabled adults with daily living needs, "such as personal hygiene and grooming, eating, shopping, money management, taking prescribed medications,

---

[2] An employee is paid on a salary basis when "the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602.

6

transportation, socializing, telephone use, and recreational activities." ECF Nos. 72-6, 72-7, 72-8, 72-9. Further, the record evidence shows that regardless of whether the class members are considered "residential" or "vocational" staff, their job duties are substantially the same in that they take clients to family visits, help with shopping for groceries and clothing, and implement client-based behavioral plans. *See* ECF No. 72-5 (Stancil-Diaz Dep. 84:15–85:21, 284:18–286:11, 45:2–21, 90:4–11). Defendants further concede that both the residential and vocational programs broadly "provide[ ] assistance" to individuals with intellectual disabilities. ECF No. 83 at 1–2. On this record, the Court finds no difference between duties of residential and vocational staff, or of coordinators and counselors, sufficient to defeat commonality or typicality.

With respect to their overtime claims, Plaintiffs assert that both coordinators and counselors worked overtime for which they were paid at or below their regular hourly rate. ECF No. 90 at 2. Whether certain administrative positions are ultimately exempt from overtime requirements is a merits-based determination not appropriate for resolution at the certification stage. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."); *see also Hoffman*, 2008 WL 11349801, at *5 (finding that whether certain positions were actually exempt from overtime "is an issue on the merits, to be considered properly in summary judgment practice or at trial, but not class certification").

The record evidence also demonstrates that named Plaintiffs in nominally supervisory rules (Craighead, Hutchinson, and Ransom) were in fact paid an hourly wage.[3] All FCI employees turned in time sheets, ECF No. 72-5 (Stancil-Diaz Dep. 120:11–121:15), and the pay

---

[3] FCI states that instances where vocational counselors "were mistakenly not paid overtime" have been "resolved or corrected." ECF No. 83 at 18. This is an issue on the merits, not a matter for class certification.

for employees in nominally supervisory positions varied based on the amount of hours they worked, ECF No. 72-5 (Stancil-Diaz Dep. 124:5–126:4). Indeed, Plaintiffs' pay records show that compensation varied based on hours worked. *See* ECF Nos. 72-11, 72-12, 72-13, 72-14. Thus, differences in job titles alone do not upset the analysis of the typicality or commonality of the claims.

Contrary to FCI's contention, implementation of "relief" pay further supports a finding of commonality and typicality. Under the "relief" pay system, FCI allowed employees to fill in for other shifts and roles, and then FCI construed such work as a "second job" rather than additional hours triggering overtime pay. ECF No. 83 at 2; *see* ECF No. 72-5 (Stancil-Diaz Dep. 130:3–19; 272:15–20). Payroll records show that employees generally received a "relief" wage of $9 or $10 an hour. *See, e.g.*, ECF No. 72-14, 72-15, 72-16. Defendants argue that the "relief" pay system involved only vocational counselors working as residential counselors, but Defendant Stancil-Diaz, the Executive Director of FCI, testified the "relief" pay system also involved supervisors working in counseling roles. ECF No. 72-5 (Stancil-Diaz Dep. 127:1–12). Additionally, Craighead, Hutchinson, and Ransom all affirmed that the "relief" system resulted in their having worked overtime hours for compensation below the overtime rate. ECF No. 72-6 at ¶¶ 5–6 (Craighead Declaration); ECF No. 72-7 at ¶¶ 5–6 (Hutchinson Declaration); ECF No. 72-9 at ¶¶ 5–6 (Ransom Declaration). In this respect, the legality of this "relief time" system is a common question for the class.

Finally, any eventual individualized determinations of damages in light of different employees' dates and hours worked is not complex enough to defeat class certification. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 427–28 (4th Cir. 2003). This is especially the case where common questions regarding implementation of a company-wide payment practice in

8

violation of FLSA lie at the heart of class claims. *See Hoffman*, 2008 WL 11239801, at *4 ("The factual questions presented by plaintiffs are encompassed by the umbrella question of whether defendant engaged in a standard and systematic practice of underpaying its employees."); *Velasquez-Monterrosa v. Mi Casita Restaurants*, 5:14-CV-448-BO, 2016 WL 1703351, at *5 (E.D.N.C. Apr. 27, 2016). Of course, if merits discovery reveals that continued classwide treatment of the claims in this case is unmanageable, the Court may always later create subclasses, if necessary. *See Harbourt v. PPE Casino Resorts Md., LLC*, No. CCB-14-3211, 2017 WL 281992, at *6 n.4 (D. Md. Jan. 23, 2017). On the current record, however, the Court finds that the commonality and typicality requirements have been met.

### 3. Adequacy of Representation

Next, the Court must consider whether the class is adequately represented by the named Plaintiffs and Plaintiffs' counsel. As to the named Plaintiffs, the Court must ascertain whether they are part of the putative class with legal interests aligned with those of the class, and whether they and the class members suffered similar injury. *See Speaks*, 324 F.R.D. at 136. As to class counsel, the Court considers whether counsel possesses the competence and experience to prosecute the class claims adequately. *Mitchell-Tracey*, 237 F.R.D. at 558. At base, the Court is centrally concerned with "whether the absent class members, who will be bound by the result, are protected by a vigorous and competent prosecution of the case by someone that shares their interests." *Id.* For a conflict between the named plaintiff and the class to defeat the adequacy requirement, the conflict must be "fundamental." *Speaks*, 324 F.R.D. at 136; *Gunnells*, 348 F.3d at 430.

Defendants argue that there is no adequacy of representation because they intend to assert affirmative defenses unique to the named Plaintiffs' individual claims. Given that the possibility

of affirmative defenses specific to particular plaintiffs "will almost always be true," the existence of such defenses alone will not defeat adequacy of representation. *Hoffman*, 2008 WL 11349801, at *4; *see also Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 552 (E.D. Va. 2000) (individual-specific affirmative defenses are "a factor for consideration").[4] Additionally, FCI's claimed defenses regarding the definition of exempt workers, the legality of "relief" pay, or the inadvertence of any wage and hour violations, reach across potential class members and their claims. *See* ECF No. 90 at 12; *compare Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 320 (4th Cir. 2006) (limitations defense defeated class certification where determinations of whether each individual plaintiff "knew or should have known about his cause of action").

Importantly, no record evidence suggests that the named Plaintiffs are pursuing individual interests that are antagonistic to the class, let alone ones that fundamentally conflict with class claims. Plaintiffs and class members all are interested in determining the legality of Defendants' pay practices and any damages that may flow from FCI's systemic violation of the FLSA and analogous Maryland law, if proven. Nothing suggests that the interests of any Plaintiffs will be at odds with the larger class. *See Speaks*, 324 F.R.D. at 137.

As to the adequacy of class counsel, FCI does not challenge Plaintiffs' counsel's bona fides in litigating wage-and-hour class-action cases. ECF No. 72-2 at 5; ECF No. 72-3 at 5, 9. Plaintiffs' counsel also have independently demonstrated to the Court the requisite knowledge and experience in this substantive area of the law, and have shown the capacity to vigorously represent the class. The class thus is adequately represented.

---

[4] With regard to Plaintiff Headen, Defendants contend that Headen had been compensated in full for FCI's historic failure to pay her minimum wage under the FLSA. If it becomes clear that Headen's claim is moot, the Court can amend its class certification order to substitute a new class representative during the pendency of this action. *See* Fed. R. Civ. P. 23(c)(1).

Because Plaintiffs have met each of the Rule 23(a) requirements, the Court next considers whether Rule 23(b)(3) has likewise been satisfied.

## B. Rule 23(b)(3)

Under Rule 23(b)(3), a class properly is certified if: (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). The Court discusses each requirement in turn.

### 1. Predominance

The question of predominance is similar to the commonality inquiry, but "far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). It asks whether the legal or factual questions raised on a classwide basis are "sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks and citations omitted). This inquiry is a "qualitative one, a question of whether the complexities of common issues outweigh that of individual issues, even if quantitatively there are more individual issues." *Harbourt*, 2017 WL 281992, at *6. Notably, as with the commonality inquiry, a possible future need to ascertain individualized damages will not defeat predominance. *See Tyson Foods*, 136 S. Ct. at 1045 (class may be proper "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members"); *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (vacating and remanding a district court's denial of class action certification due to the need for individualized damages inquiries). Rule 23(b)(3) requires a "showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class . . . a Rule 23(b)(3) certification ruling is not

to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen*, 568 U.S. at 459–60 (2013) (internal marks omitted).

In this case, common issues surrounding FCI's systemic compensation practices sufficiently eclipse individualized defenses or damages assessments. Defendants' practices for calculating wages, whether minimum wage or overtime, can be answered with generalized proof. *See Hoffman*, 2008 WL 11349801, at *6 ("Even though the amount of each employee's damages will differ and must be individually determined, the common question . . . predominates."). Indeed, several of the defenses raised in opposition to certification highlight this point. For example, Defendants contend that they were obliged to compute overtime only for hours worked in excess of 48 in any given workweek. If Defendants are correct, that determination will apply to all class claims.

If liability is established, certain individualized inquiries will be necessary to determine each class member's length of employment, hours worked, and wages owed. However, existing payroll records will render this damages process far less cumbersome than trying each putative class member's liability case as a separate action. *See* ECF No. 72-1 at 11–13. Predominance of class claims is satisfied.

**2. Superior Mechanism**

A class action must also be superior to other available methods of litigation for a fair and efficient adjudication of this controversy. *See Hoffman*, 2008 WL 11349801, at *6. In this case, certification of the class will unify and streamline a large number of small claims. Accordingly, proceeding by class action is a superior method of adjudication to ensure that individual claims otherwise not likely to be tried individually may go forward collectively. *See id.*; *Velasquez-Monterrosa*, 2016 WL 1703351, at *6 ("Based on the relatively small amount of individual

wages at issue in this case . . . it does not appear that the putative class members would have a great incentive or desire to bring individual suits against defendants."); *Stillmock*, 385 F. App'x at 275 (class certification promotes "consistency of results, giving [Defendants] the benefit of finality and repose").[5] Classwide treatment of claims is a superior method of adjudication here. *Cf. Harbourt*, 2017 WL 281992, at *6.

## IV. Conclusion and Order

For the reasons discussed above, it is this 27th day of July 2018, by the United States District Court for the District of Maryland, ORDERED that:

1. The Motion for Class Certification filed by PLAINTIFFS TALIA CRAIGHEAD, VERENESHA HUTCHINSON, VERNICE HEADEN, and PAMELA RANSOM (ECF No. 72) BE, and the same hereby IS, GRANTED;

2. The parties shall have 14 days from the entry of this order to jointly propose a scheduling order for the merits phase of the case;

3. The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel for the parties.

7/27/2018
Date

/S/
Paula Xinis
United States District Judge

---

[5] The Court would be remiss not to note that during the hearing on Plaintiffs' motion for conditional certification under the FLSA, Defendants expressed significant consternation about the potential for serial FLSA cases, arguing that the Court should preclude Plaintiffs from asserting FLSA claims because of historic litigation between FCI and a separate plaintiff not named in this action. This class, certified pursuant to Rule 23, will give FCI the very preclusive effect it seeks as to the class members who do not to opt out of this litigation.