**OUTTEN & GOLDEN LLP**

Advocates for Workplace Fairness

November 15, 2019

**VIA CM/ECF**
The Honorable Paula Xinis
U.S. District Judge
District of Maryland
6500 Cherrywood Lane, Suite 400
Greenbelt, MD 20770

    Re: *Craighead, et al., v. Full Citizenship of Maryland, Inc., et al.*,
      Case No. 8:17-cv-00595-PX

Dear Judge Xinis:

  Together with our co-counsel, DC Wage Law, we represent members of a certified Class and Collective in the above-referenced matter. We write pursuant to the Court's Orders, ECF Nos. 198, 200, to respectfully request that the Court: (1) invalidate the Rule 23 opt-out forms of the six individuals who signed Settlement Agreements and submitted opt-out forms; (2) order corrective Rule 23 notice be sent to those six individuals advising them of their rights to opt out of the Rule 23 Class; (3) order corrective notice be sent to all 11 individuals who signed a Settlement Agreement, whether or not they filed opt-out forms, providing them with an opportunity to opt in to the Fair Labor Standards Act ("FLSA") collective; and (4) invalidate the Settlement Agreement's Release of Claims provision.

  Corrective action is necessary because Defendants' purported Settlement Agreements misled workers into believing they had released their claims in this case and they could not participate in the litigation, even though that was not true.

## **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

  On March 1, 2017, Plaintiffs filed this action asserting FLSA claims on behalf of a proposed collective and Maryland Wage and Hour Law ("MWHL") and Maryland Wage Payment Collection Law ("MWPCL") claims on behalf of a proposed Rule 23 class. ECF No. 1. On February 16, 2018, the Court conditionally certified a Collective, ECF No. 78, and on July 27, 2018, the Court certified a Rule 23 Class. ECF No. 107.

  Between May 16, 2017 and February 20, 2018, after this case was filed, Defendants entered into 11 Settlement Agreements with putative Class and Collective Members. Ex. A (Settlement Agreements). The Settlement Agreements contain a release provision in which employees "completely" release claims to "any and all past wages." *Id.* at § 1.1.

**New York** 685 Third Avenue  25th Floor  New York, NY 10017  Tel (212) 245-1000  Fax (646) 509-2060
**Chicago** 161 N Clark Street  Suite 1600  Chicago, IL 60601  Tel (312) 809-7010  Fax (312) 809-7011
**San Francisco** One California Street  12th Floor  San Francisco, CA 94111  Tel (415) 638-8800  Fax (415) 638-8810
**Washington DC** 601 Massachusetts Ave NW  Suite 200W  Washington, DC 20001  Tel (202) 847-4400  Fax (202) 847-4410

www.outtengolden.com

The Honorable Paula Xinis
November 15, 2019
Page 2 of 5

The Settlement Agreements were signed by unrepresented current FCI employees at their work place, during work hours, in meetings overseen by their supervisor Defendant Pansy Stancil-Diaz, who asked them to attend the meetings, and with Defendants' counsel present. *See, e.g.*, ECF No. 207-6 (Sept. 16, 2019 Hearing Tr.) at 16-18 (Class Member testified that Defendant Stancil-Diaz asked him to attend a meeting during work hours to meet with Defendants' attorneys, where he was presented with the Settlement Agreement); *id.* at 71, 92-93 (Defendant Stancil-Diaz testified that she asked Class Members to attend the meetings and she was present when Class Members signed the Settlement Agreement). Employees who signed the Settlement Agreements had no counsel present. *See, e.g., id.* at 18-19.

During discovery, Defendants withheld the Settlement Agreements from Plaintiffs and did not move for the Court to approve them. ECF No. 170 (Letter to Court) at 2 (explaining that Plaintiffs propounded discovery requests for which the Settlement Agreements were responsive). On July 25, 2019, Plaintiffs requested the Court compel Defendants to produce the Settlement Agreement to Plaintiffs, which the Court did on July 26, 2019. ECF Nos. 170, 172. On August 2, 2019, Defendants produced the 11 Settlement Agreements they entered into with Class Members. These Settlement Agreements represented a fraction of what Plaintiffs estimate these Class Members are owed. The following chart summarizes the settlement amounts, unpaid wages, damages, and whether the workers submitted opt-out forms.[1]

| Name | Settlement Amount | Unpaid Wages | MWPC Unpaid Wages and Treble Damages | Submitted Opt-out Form? |
|---|---|---|---|---|
| Akanbi, Rachel | $ 5,500.00 | $ 17,570.18 | $ 52,710.53 | No |
| Calvin, Nadia | $ 1,500.00 | $ 3,352.67 | $ 10,058.01 | Yes |
| Francis, Claudia | $ 4,500.00 | $ 27,197.32 | $ 81,591.96 | Yes |
| Greaves, Lawriston | $ 12,000.00 | $ 72,411.08 | $ 217,233.23 | Yes |
| Guinyard, Sam | $ 1,500.00 | $ 2,540.95 | $ 7,622.85 | No |
| Kargbo, Hassan | $ 2,500.00 | $ 12,995.94 | $ 38,987.83 | Yes |
| Maduakor, Ifeanyi | $ 3,000.00 | $ 8,282.79 | $ 24,848.38 | No |
| McMillian, William | $ 1,000.00 | $ 4,743.59 | $ 14,230.78 | Yes |
| Minder, Ernest | $ 750.00 | $ 2,385.04 | $ 7,155.11 | No |
| Nolan, Camdon | $ 4,500.00 | $ 15,362.56 | $ 46,087.68 | Yes |
| Nwalozie, Anthony | $ 6,750.00 | $ 18,556.42 | $ 55,669.25 | No |

**ARGUMENT**

**I.     The Settlement Agreements' "Release of Claims" Provision Misled Class Members.**

Because FLSA settlement agreements require court approval, Defendants' release language led Class Members to incorrectly believe that without Court approval, they had signed

---

[1]     A detailed accounting of the workers' damages can be found at ECF No. 192-13 at 2, 3; ECF No. 192-10 at 6-7, 19, 34-35, 38-39, 40, 46-48, 52, 54-55, 58-60.

The Honorable Paula Xinis
November 15, 2019
Page 3 of 5

an enforceable agreement precluding their involvement in this case.  Ex. A (Settlement Agreements) at § 1; *see also Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460-63 (4th Cir. 2007) (FLSA settlements require approval from a court or Department of Labor); *Brockman v. Keystone Newport News, LLC*, No. 15 Civ. 74, 2018 WL 4956514, at *2 (E.D. Va. Oct. 12, 2018) ("The FLSA has a [general] policy against employees' ability to waive claims of unpaid overtime 'for fear that employers would coerce employees into settlement and waiver.'") (citation omitted).  Congress "enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees." *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407 (D. Md. 2014).  To fulfill this purpose, the "statute's provisions are mandatory" and any settlement needs court approval that the settlement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching."  *Id.*[2]

Here, the Settlement Agreements required workers to "release" all their wage and hour claims and agree not to opt in to the action.  *See* Ex. A (Settlement Agreements) at § 1.  Neither Defendants nor Defendants' counsel informed the unrepresented workers that court approval is required to render a waiver of FLSA rights effective.  *See* Ex. A (Settlement Agreements); *see also* ECF No. 207-6 (Sept. 16, 2019 Hearing Tr.) at 18-19.  As a result, individuals who signed the Settlement Agreements mistakenly believed they had released their claims and that they could not participate in this case.  *See* ECF No. 207-6 (Sept. 16, 2019 Hearing Tr.) at 23-24, 36-37 (Class Member believed that signing the agreement meant he released his claims and could not participate in this case).

Those who signed the Settlement Agreements forfeited opportunities to exercise their rights under the FLSA and, in some cases, Maryland wage and hour laws.  They lost the ability to recover under the FLSA by opting in to this FLSA action during the notice period because they mistakenly thought they could not.  *See* ECF No. 207-6 (Sept. 16, 2019 Hearing Tr.) at 23-24.  Some Class Members also believed they had to opt out of the litigation to comply with the Agreements.  *See* ECF No. 207-6 at 36 (Class Member believed that signing the agreement meant he was not allowed to participate in the class action lawsuit).

## II.     The Court Should Nullify the Release Language but Permit Workers to Keep the Settlement Payments.

Because the workers entered into the Settlement Agreements based on misinformation, under a coercive situation, for a fraction of what is owed to them, and because workers cannot waive their rights under the FLSA, MWHL or MWPCL, Plaintiffs request the Court nullify the release language but allow the workers to retain the settlement payments and any additional amount recovered through this lawsuit.

The only logical reason Defendants attempted to settle with workers directly while this case was pending was because Defendants believed they could avoid fully compensating workers

---

[2]     Similarly, a worker cannot waive their rights to "full payment" under the MWHL or MWPCL.  *Johnson v. CRC Holdings, Inc.*, No. 16 Civ. 2937, 2017 WL 914998, at *3 (D. Md. Mar. 8, 2017).

by dealing directly with them while they were unrepresented.  Taking the dispute outside the adversarial context designed to produce a fair settlement created a coercive environment for employees to agree to a "waiver of statutory rights brought about by an employer's overreaching."  *Duprey*, 30 F. Supp. 3d at 407.  Some courts have found that "to approve an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA." *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, *Emp't Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982) (confused and misled employees are "illustrative of the many harms which may occur when employers are allowed to 'bargain' with their employees over minimum wages and overtime compensation . . ..").

Here, despite Defendants' straightforward liability, individuals who signed Settlement Agreements received pennies on the dollar for their claims. *See* ECF No. 182 (Letter to Court) at 3; ECF No. 192-13 (Damages Summary).  The settlement amounts account for eight percent of their total damages.  *See id.*

Plaintiffs are entitled to keep the settlement payments and pursue the delta between what they were paid and what they are owed under the FLSA, MWHL, and MWPCL.  This is true because "waivers of FLSA rights which are neither administratively supervised nor judicially approved are not enforceable to bar a cause of action for unpaid . . . compensation." *Druffner v. Mrs. Fields, Inc.*, 828 P.2d 1075, 1080 (Utah Ct. App. 1992); *see also Johnson*, Inc., 2017 WL 914998, at *3 (workers cannot waive their rights under the FLSA, MWHL, or MWPCL).

### III.     Plaintiffs Request the Court Authorize Corrective Notice.

Corrective notice is warranted because defendants misled workers to settle for far less than they were owed and discouraged them from participating in this case.  In fact, when provided with a fuller accounting of his potential damages, Vocational Counselor Lawriston Greaves testified that he would like to withdraw his opt-out form and proceed in this case.  ECF No. 207-6 (Sept. 16, 2019 Hearing Tr.) at 8-9, 36-37.

Because presenting workers with a more accurate representation of their damages would likely affect their decision about whether to participate in this case, Plaintiffs request the Court: (1) invalidate the opt-out forms for the six people who signed Settlement Agreements and opted out of the case, (2) provide corrective notice to all individuals who signed Settlement Agreements allowing them to opt out of the Rule 23 class or opt in to the FLSA collective; and (3) toll the FLSA statute of limitations for any individual who then chooses to opt in.

Invalidating the opt-out forms of the individuals who signed Settlement Agreements is warranted because "[i]n cases where courts cannot determine if class members decided to withdraw on their own volition or because of the abusive communication, courts have restored those who opted out as members of the class." *Randolph v. PowerComm Const., Inc.*, 41 F. Supp. 3d 461, 467-68 (D. Md. 2014) (citing *Guifu Li v. A Perfect Day Franchise*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) (invalidating opt-out forms in FLSA action after the court could not "determine whether the negotiations leading to these agreements were the result of a conscious choice by the plaintiffs or the result of abusive communication").  Here, the fact that

The Honorable Paula Xinis
November 15, 2019
Page 5 of 5

unrepresented workers met with Defendants' counsel in the presence of their boss during work hours demonstrates the coercive nature of Defendants' behavior that led workers to opt out of the case. *See supra* Section I; ECF No. 207-6 (Sept. 16, 2019 Hearing Tr.) at 36-37 (Class Member believed that he would not be able to participate in the class action lawsuit because he signed the Settlement Agreement and he would revoke his opt-out form if he had the opportunity to do so).

Under similar circumstances, courts have ordered corrective notice that explains the employer's improprieties and provides workers with another opportunity to decide whether they wish to participate in the litigation. *See, e.g., Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99 Civ. 4567, 2001 WL 1035132, at *7 (S.D.N.Y. Sept. 7, 2001) (finding employer's "communications with potential members of the putative class warrant" sending notice including the court's findings and "any potential member of the putative class who has already signed a release must be afforded an opportunity to apply to the Court to have that release voided").

Courts have also ordered an additional period to allow employees to opt in to an FLSA collective when defendants have confused or misled employees about their ability to participate in the litigation. *See Mueller v. Chesapeake Bay Seafood House Assocs., LLC*, No. 17 Civ 1638, 2018 WL 1898557, at *8 (D. Md. Apr. 20, 2018) (ordering corrective notice and an additional period allowing potential collective members to opt in to the FLSA action because the employer "may have confused potential class members as to their ability to opt-in to this litigation [and] . . . may have dissuaded potential class members from joining this litigation"). Providing corrective notice with the ability to opt in to the litigation would mitigate the effects of Defendants' misrepresentations regarding the release.

Finally, Plaintiffs request that the claims of individuals who choose to opt in to the Collective after receiving corrective notice be equitably tolled from May 10, 2018, the date the FLSA Notice issued, through the date of the Court's order on this motion. Equitable tolling is available to Plaintiffs in FLSA cases when "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir.2000); *Schilling v. Schmidt Baking Co., Inc.*, No. 16 Civ. 2498, 2018 WL 3520432, at *7 (D. Md. July 20, 2018) (granting equitable tolling in FLSA action because, in part, a company executive told workers that they should not join the collective action). Here, the Settlement Agreements misled potential Collective Members to believe that they were prohibited from opting in to the FLSA collective, even though they were unable to release their FLSA claims without court approval. *See* Ex. A (Settlement Agreements) at § 1.1. Therefore, "extraordinary circumstances" prevented those who signed Settlement Agreements from opting in to the FLSA collective action in a timely manner and tolling is warranted.

We thank the Court for its consideration.

Respectfully submitted,

Sally J. Abrahamson

cc:   All Counsel of record (via CM/ECF)