

The B&O Building
2 N. Charles Street, Suite 600
Baltimore, MD 21201
410.752.8700
410.752.6868 Fax
www.fandpnet.com

Tamara B. Goorevitz
Direct 410.230.3625
tgoorevitz@fandpnet.com
Admitted in MD & DC

November 15, 2019

*Via CM/ECF*
Honorable Paula Xinis
United States District Judge
United States District Court for the District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

    Re: *Talia Craighead, et al. v. Full Citizenship of Maryland, Inc., et al.*
      Case No.:  8:17-cv-00595-PX

Dear Judge Xinis:

  Please accept this correspondence on behalf of Defendants, Full Citizenship of Maryland, Inc. ("FCI") and Pansy Stancil-Diaz, regarding 11 settlement agreements reached between Defendants and FCI employees from 2017 to 2018 (attached hereto as **Ex. A**), regarding wage-and-hour claims associated with their employment.  Defendants ask the Court to approve these agreements, and to deny Plaintiffs' requests for relief with respect to these agreements.  Defendants also request that the Court validate the opt-out forms submitted by six (6) of the settling employees: Lawriston Greaves, Camdon Nolan, Claudia Francis, Nadia Calvin, William McMillan and Hassan Kargbo.  These forms were submitted voluntarily, unrelated to the settlement agreements, and therefore, there is no reason before the Court to invalidate the opt-out forms.  Additionally, the settlements were fair, reasonable, and voluntarily entered into by the employees as a result of open arm's-length discussions.  Moreover, there was nothing false, misleading or coercive about FCI's communications with the employees leading up to these agreements, and Defendants fully disclosed all relevant facts regarding any pending litigation and regarding the employees' rights.  Lastly, the financial terms of the agreements were fair and reasonable, in light of the parties' ongoing disputes over the merits and likelihood of success of the current litigation, and disputes regarding potential damages which the settling employees may have been entitled to obtain in litigation.

  1. ***The Court Should Approve the Prior Settlement Agreements, as They Are Facially Valid, and Were Voluntarily Reached as a Result of Arm's-Length Communications that Were Open, Truthful, and in No Way Misleading or Coercive.***

  Under the traditional test applied by the courts of this Circuit, "an FLSA settlement generally should be approved if it reflects a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions."  *Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 2949047, at *3 (June 13, 2013) (citing *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)).  Further,

notwithstanding the special nature of FLSA actions, "[t]he law favors settlements of class actions no less than of other cases." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590 (S.D.N.Y. 1992). The Court should approve these settlement agreements, as they were reached with employees before they were or could have been members of these class or collective actions, and because every aspect of the agreements and the surrounding communications were fair, truthful, and voluntary, and included no false, misleading or coercive communications.

First, all but one of the settling employees executed releases after the Complaint in this case had been filed but before either action in this case had been certified.[1] *See* **Ex. A**. (Mr. Nwalozie executed his release days after the collective action was conditionally certified, but had reached a verbal agreement in principle before). When the releases were executed, no notices had been sent out with respect to either action, and none of these employees were represented by counsel.

More important, the releases facially are valid arm's-length agreements that amply show that the employees were aware that a lawsuit had been filed in the current litigation and conditional certification had been sought (*see* **Ex. A**, at ¶ 1.2); aware they had received collective action notices regarding the Gordon Anthony litigation, and chose not to opt in; and aware that by settling any wage-and-hour claims, they sacrificed rights to litigate on any such claims.[2] *Id.* The employees acknowledged they had "had full and ample opportunity to seek representation by legal counsel," and they executed the Releases "knowing the legal significance of that decision as it pertains to the terms and/or interpretation of" the agreement. *Id.* at ¶ 6.0. Each employee "also signed the Release "knowingly and voluntarily without coercion or duress." *Id.* Lastly, most of the eleven employees signed separate "Consent to Meeting" forms (*see* **Ex. A**), stating they "agreed to meet with [FCI's] attorneys voluntarily and of my own free will, to discuss a possible settlement relating to the payment of wages," and understood "there will be no retaliation" if they chose not to discuss. *Id.*

Furthermore, during settlement discussions defense counsel provided no false or misleading information to the employees, and placed no coercive pressure. First, that defense counsel spoke with the employees in circumstances where they were not yet represented by counsel creates no issue. Before class certification, "counsel for both parties maintain a free-speech right to communicate with putative class members, *ex parte*, about the lawsuit – including a right to offer to settle" (*Kutzman v. Derrel's Mini Storage, Inc.*, 354 F. Supp. 3d 1149 (E.D. Cal. 2018)), especially "where the court has not yet granted a conditional class certification and it is still unclear whether the employees are similarly situated to the plaintiff." *Slavinski v. Columbia Ass'n, Inc.*, 2011 WL 1310256, at *3 (D.Md. Mar. 30, 2011). Courts will interpose themselves only when presented with evidence of false, misleading or coercive communications. *See Law Offices of Leonard I. Desser, P.C. v. Shamrock Comm. Inc.*, 2013 WL 2552141, at *4 (D.Md. June 10, 2013) (court struck pre-certification affidavits obtained by defendant, where it failed to disclose information regarding current litigation, advise consumers of right to consult with counsel, or explain that affidavits would affect ability to participate in litigation). *Cf. Keystone Tobacco Co. v. U.S. Tobacco Co.* 238 F. Supp.

---

[1] Sam Guinyard reached settlement agreement with FCI for $4,500.00, but did not execute the same release as the other ten settling parties did. Mr. Guinyard signed a handwritten release of January 21, 2018. Mr. Guinyard was fully paid, and has not expressed any objection to this settlement.

[2] Moreover, all of the Releases included provisions, including confidentiality provisions, that were nearly identical to those in the release signed by Gordon Anthony, from the prior FCI litigation where Class Counsel Justin Zelikovitz represented Mr. Anthony and also approved of that release. *See* Anthony Release, **Ex. B**, attached.

2d 151, 155-56 (D.D.C. 2002) (settlement offers were proper, where written offers described present case, noted existence of other lawsuits, provided class counsel's contact information, sent copy of complaint, explained effects of settling, and recommended seeking advice of counsel).

Here, plaintiffs present no evidence that the settlements were the result of false, misleading or coercive conduct. In fact, detailed contemporaneous notes from meetings with Lawriston Greaves related to the Anthony litigation (*see* Greaves Notes, at **Ex. C**), clearly show that FCI's counsel gave Mr. Greaves full and truthful information about the instant litigation and the claims being made; fully informed him that settling meant releasing the right to participate in future litigation regarding wage-and-hour claims; and, most important, informed him that his decision to settle would be completely voluntary. *Id*. *See* Sharma Affidavit, at **Ex. D**, and Goorevitz Affidavit, at **Ex. E**. Ms. Goorevitz told Mr. Greaves she represented FCI (and not Mr. Greaves), and he should consult with a private attorney if he needed legal advice. *See* **Ex. C**, at 4. Mr. Greaves was told that if he chose not to settle, or chose to participate in any litigation, his employment with FCI would not be affected (*id*. at 5); and he was told of the amount of damages claimed in the Anthony litigation, including Plaintiffs' claim that Mr. Greaves was entitled to $125,000 plus enhanced damages (more damages than Plaintiffs claim in the instant litigation). *Id*. at 3-4. Despite all of this, Mr. Greaves twice indicated (*id*. at 1-2) that he wanted "nothing to do" with the litigation, and following the verbal agreement as to the terms of settlement on April 4, 2017, Mr. Greaves took over a month to privately consider the offer, finally executing the release, of his own accord, on May 16, 2017.[3]

Furthermore, as confirmed by Ms. Goorevitz's sworn declarations (*see* **Ex. E**), Ms. Goorevitz discussed the instant litigation with the settling employees; told them that the attorneys in the instant litigation were the same as those from the Anthony case; established that all but one of the employees (Ms. Calvin) had received the Anthony collective action notice, and they had chosen not to opt-in; advised the employees that the claims in this case were the same as those made in the Gordon Anthony case, but the plaintiffs were different; and told the employees that by agreeing to this voluntary settlement, they agreed to release all wage-and-hour claims against FCI. *See* **Ex. E**, at ¶8. Further, Mr. Greaves and Mr. Kargbo specifically stated they had gotten multiple phone calls from Plaintiffs' counsel regarding the Anthony matter, and stated that they wanted the calls to stop and did not want to be involved. *See* **Ex. C** at 3-4; **Ex. E**, at ¶ 8. Plaintiffs present no evidence indicating that any aspect of these meetings were marred by false, misleading, abusive or coercive statements.

Mr. Greaves himself confirmed at the September 26, 2019 hearing that he voluntarily opted out of this litigation; that he was informed about the instant litigation, that Ms. Goorevitz was not his counsel, and that he could hire his own attorney; and he confirmed that he voluntarily signed the release. *See* ECF 207-6, at 42-44. Mr. Greaves indicated during the above hearing that he was aware he was releasing his right to participate in litigation, and indicated that his decision to opt-out of the instant case was not caused by false or misleading information during settlement discussions.[4] It was clear from these agreements and all surrounding circumstances that all of the settling employees

---

[3] Furthermore, the executed release (at ¶ 11.1) specifically states that the "Releasor understands that he has the right to revoke acceptance" of the agreement "within seven (7) days following the date on which he signs it … ." Mr. Greaves never exercised his right to revoke the agreement, before or after the seven-day period had lapsed.

[4] It also became evident during the hearing that, despite his testimony that he eventually opted out of the current class action because he felt it was "the right thing to do," when pressed by the Court to explain what he meant, Mr. Greaves could not clarify. He also confirmed unequivocally that Defendants did not push or pressure him into making this independent decision, and indeed did not speak with him *at any time* about his decision to opt out.

freely and subjectively agreed that they wished to settle their claims rather than engage in any pending or future litigation. And there is no evidence that the six employees who later opted out of the instant litigation did so because they were somehow misled by Defendants during prior settlement discussions. These employees accepted and have had the benefit and use of the agreed settlement payments for nearly two years.

### 2. *The Settlement Amounts Were Fair, Reasonable Compromises of Bona Fide Disputes Regarding the Likelihood of Success on the Merits and the Extent of Possible Damages*

There is no basis for arguing that these settlement agreements should be made voidable or not approved based on how much the employees were paid. The evidence shows the agreements were fair and reasonable compromises, which reflected open disclosure of all relevant facts as to the claims and damages asserted by Plaintiffs, and reflected good-faith, bona fide disputes as to the likelihood of success on the merits and the extent of damages to which the employees were entitled under the law.

In this Circuit, "an FLSA settlement generally should be [judicially] approved if it reflects a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Saman*, *supra* at 1, at *3; *see Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D.Va. Sept. 28, 2009). Usually, courts consider "several factors: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel... ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Saman*, at *3 (quoting *Lomascolo*, at *10). "There is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors … in [determining] whether a settlement is fair, adequate and reasonable[]" (*Lomascolo*, at *10); and "…and a court's role is more a 'balancing of likelihoods rather than an actual determination of the facts and law in passing upon whether the proposed settlement is fair, reasonable and adequate.' " *Id.* (citations omitted).

Given when these agreements were entered, the traditional analysis under the FLSA does not apply, and most of the several factors above are of little use. Nevertheless, this court should consider the amount of the settlement payments, and the significant disputes surrounding the litigation, and determine that the settlement payments were fair, adequate and reasonable amounts. *See Hickman v. G.C. of Capital Centre, LLC*, 2019 WL 952186, at *5 (D.Md. Feb. 27, 2019); *Lomascolo*, 2009 WL 3094955, at *10; *Saman*, 2013 WL 2949047, at *5.

Here, the settlement amounts of the respective settling employees are reflected in their respective executed releases (*see* **Ex. A**). Defendants' own calculations of a range of possible damages for the settling employees (*see* Defs.' Damages Calculations, attached as **Ex. F**) – assuming they were to become members of any future class and assuming liability, which remains strongly contested – and a review of the settlement amounts in light of these estimated calculations and the parties' bona fide liability and damages disputes, demonstrate that the final settlement amounts were fair, adequate and reasonable. . First, there are serious good-faith disputes as to the merits of the Plaintiffs' claims and bona fide disputes, factual and legal, as to the likelihood of success of these claims at trial. These facts justified the final settlement amounts: there were genuine risks that the employees, had they participated in litigation (or even found to be a part of any class), would have

been entitled to no damages at all. Further, as borne out by recent summary judgment briefing, Defendants maintain that the lack of any evidence of willfulness by Defendants as to any possible violations limits the extent of damages owed, because it limits the statute of limitations to two years; and Defendants maintain that under the law Plaintiffs are not entitled to any treble damages, and maintain that FCI was bound by a 48-hour overtime workweek under Maryland law, not the 40-hour work week Plaintiffs allege – all of which issues, should Defendants prevail, would greatly reduce any total damages award even if Plaintiffs were to prevail on the merits at trial.

Lastly, all of the employees were informed about the claims asserted in this case, and of the alleged nature of the damages asserted by the Plaintiffs in this suit, and several of these employees not only expressed a desire not to participate in the litigation, but also expressed dismay with the named Plaintiffs bringing the suit, and in a few cases, stated that they were not demanding any compensation from FCI at all. *See* **Ex. D and E**. Considering this demonstrated desire not to participate in any litigation or in some cases even to be paid past wages, in light of the clear, bona fide factual and legal disputes as to the damages owed to these employees or their likelihood of ever succeeding on the merits, the settlement amounts finally paid to these employees, must be viewed as fair, adequate and reasonable under the law.

For these reasons, Defendants ask the Court to approve these settlements on the basis that they are fair and reasonable settlements of bona fide disputes; and to decline Plaintiffs' request to render these agreements voidable or to issue corrective notices to those six settling employees who later opted out of the instant litigation; and enforce the opt-out forms previously submitted.

Respectfully submitted,

*Tamara B. Goorevitz*

Tamara B. Goorevitz

cc: All Counsel of record (via CM/ECF)