IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| TALIA CRAIGHEAD, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 17-cv-595-PX |
| FULL CITIZENSHIP OF MARYLAND, INC., *et al.*, | * | |
| Defendants. | * | |

******

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiffs' Motion for Substitution, Plaintiffs' Motion for Summary Judgment, and Defendants' Cross-Motion for Partial Summary Judgment. ECF Nos. 192, 201, 211. Plaintiffs, on behalf of themselves and all others similarly situated, have filed this action alleging that Defendant Full Citizenship of Maryland, Inc. ("FCI") and FCI's Executive Director, Defendant Pansy Stancil-Diaz, violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and analogous Maryland law.

The matter has been fully briefed, and the Court rules pursuant to Local Rule 105.6 because no hearing is necessary. For the following reasons, Plaintiffs' Motion for Substitution is DENIED, Plaintiffs' Motion for Summary Judgment is GRANTED in part and DENIED in part, and Defendants' Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.

**I.    Procedural Background**

Plaintiffs have filed suit on behalf of an opt-in class of current and former FCI employees, bringing claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; and an

opt-out class pursuant to Rule 23 of the Federal Rules of Civil Procedure, covering the companion state law claims brought pursuant to the Maryland Wage and Hour Law ("MWHL") Md. Code Ann., Lab. & Empl., § 3-401 *et seq.,* and Maryland Wage Payment and Collection Law ("MWPCL"); Lab. & Empl., § 3-501 *et seq.*  ECF No. 34.  In both the FLSA collective and the state law class claims, Plaintiffs are divided into two subclasses based on job responsibilities: residential and vocational coordinators ("coordinators") and residential and vocational counselors ("counselors").  The Court previously granted Plaintiffs' motions for conditional and class certification and the periods for opting in and out have passed.  ECF Nos. 94, 107, 146-1, 147.  *See Craighead v. Full Citizenship of Maryland, Inc.*, No. 17 Civ. 595, 2018 WL 3608743, at *6 (D. Md. July 27, 2018).  For the opt-in FLSA claim, twenty-two coordinators and counselors joined the collective.  ECF No. 192-2.

While Plaintiffs' motion for conditional certification was pending, Defendants reached settlement agreements with 11 putative class and collective members.  ECF Nos. 212, 213. Defendants did not seek the Court's prior approval of the settlement agreements but now so move.  ECF No. 213.  Similarly, after this litigation began, Defendants also claim to have "reimbursed" certain counselors for wages owed.

Now pending before the Court are the parties' cross motions for summary judgment. Plaintiffs move for summary judgment on whether Defendant Pansy Stancil-Diaz is a joint-employer who can be liable with FCI for any successful wage and hour claims.  Defendants do not contest that Stancil-Diaz is a joint employer and so the Court grants Plaintiffs' motion on that narrow question.[1]

---

[1] Defendant Pansy Stancil-Diaz is the Executive Director of FCI who has admitted to assuming sufficient responsibilities and supervisory control to constitute a joint employer as a matter of law.  ECF Nos. 201-5; 72-5 at 59-60, 66-73, 90, 108-110, 231-32, 237-240, 330-331; 192-6 at 12-15; 192-7 at 38; 90-1 at 28.  *See* 29 U.S.C. § 203(d) ("employer" to include "any person acting directly or indirectly in the interest of an employer in relation to

Plaintiffs also move for summary judgment on all claims for both subclasses. Defendants' response is mixed depending on the claim (minimum wage versus overtime) and subclass (coordinator or counselor). Plaintiffs lastly ask this Court to substitute a personal representative for a claimed-opt in vocational counselor, Jennifer Bumbray, who died prior to the commencement of this litigation. Defendants vigorously oppose the substitution motion.

Defendants separately move for summary judgment to be granted in their favor on all claims related to Bumbray. Defendants also seek judgment in their favor as to whether any such FLSA claims were willfully committed, thus triggering a three-year limitations period instead of the presumptive two-year period. The Plaintiffs cross move for judgment in their favor on the question of willfulness for purposes of the applicable statute of limitations and the availability of liquidated damages under the FLSA.

For the following reasons, the cross-motions are GRANTED in part and DENIED in part. The Court first summarizes the record evidence and applicable standard of review, then turns to each of the above motions.

**II.     Factual Background**

The following facts are undisputed unless indicated otherwise.

**A.     FCI**

FCI is a charitable organization that provides residential support and vocational assistance to adults with cognitive disabilities. ECF No. 83-1. The organization offers services to clients through three programs—its Residential Program, Supported Employment Program,

---

an employee,"); Md. Code Ann., Lab. & Empl. § 3–401 ("employer" includes "person who acts directly or indirectly in the interest of another employer with an employee."). *See also Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (six factor economic reality test for joint-employer status under FLSA & MWHL); *Campusano v. Lusitano Const. LLC,* 208 Md. App. 29, 39 (Md. Ct. Spec. App. 2012) (same for MWPCL).

and Individual Support Services Program.  *Id.*  The Residential Program provides "alternative living units" for clients at residential homes in Prince George's and Montgomery counties.  ECF No. 34 ¶ 21, 23.  Clients living in FCI's group homes receive assistance with daily living tasks such as housekeeping, medication management, personal hygiene, clothing care, shopping, financial management, and socialization.  ECF No. 83-2.  Those in the Supported Employment Program receive assistance with professional growth through a variety of services including career planning, travel and social skills training, and worksite supervision.  *Id.*

For purposes of this case, two kinds of FCI employees comprise the operative subclasses—counselors and coordinators.  FCI has two groups of counselors—residential and vocational counselors.  ECF No. 83-3 at 2-3.  Residential counselors assist FCI clients living in the Residential Program with home, social, leisure time, and recreational activities. ECF No. 201-2 at 3.  Their duties included aiding clients with various daily living tasks including medication management, hygiene, and visiting families.  ECF No. 192-7 at 7.  Vocational counselors offer clients on-the-job training and assist them in meeting employer expectations and managing their earnings.  *Id.*

FCI also employs both residential and vocational coordinators.  The job duties of residential coordinators, such as plaintiffs Talia Craighead, Verenesha Hutchinson, and Pamela Ransom, overlapped with those of residential counselors, and at times residential coordinators filled in for counselors' shifts.  ECF Nos. 192-7 at 7, 11; 192-8 at 10; 192-5 at 36.  Coordinators regularly assist clients with daily needs such as cooking, cleaning, and laundry.  ECF Nos. 192-7 at 7, 11; 192-8 at 10.  Residential coordinators also manage group home and client budgets as well as supervise, train, and evaluate the performance of other residential staff.  ECF Nos. 201-7; 192-6 at 6, 18; 201-8.  *see also* ECF No. 201-7 (Duties include to "[h]old responsibility for

4

residential program oversight"). They also develop and monitor FCI clients' individualized behavioral plans and managed daily schedules for both clients and staff. ECF Nos. 192-5 at 24, 88; 192-6 at 6; 192-8 at 9.

### B. FCI's Pay System

According to Defendants, coordinators were salaried employees. ECF No. 201-5 at Ex. 4A - 4D; ECF No. 83 at 13. Plaintiffs contend, however, that all residential and vocational staff were required to clock in and out of a timekeeping system and were then paid on an hourly basis. ECF Nos. 72-1 at 7; 72-5 at 121-22. Coordinators often complained to FCI that, contrary to FCI's representations, the organization paid them on an hourly basis. ECF Nos. 192-6 at 29-30; 192-7 at 26-27; 192-11 at 11. As for counselors, the parties do not dispute that they were hourly employees. ECF Nos. 192-6 at 29-30; 192-7 at 26-27; 192-11 at 11. The stated hourly wage for counselors ranged from roughly $9.00 to $13.00. ECF Nos. 201-5 ¶11, 201-6 ¶ 8.

Vocational counselors and all coordinators were subject to Defendants' "relief pay" system which Plaintiffs argue allowed FCI to shortchange them of applicable minimum wage and overtime pay. ECF Nos. 83 at 18; 201-6 ¶ 9. Under the relief pay system, any hours worked in excess of a forty-hour work week were characterized as "additional shifts" that an employee could pick up, as if they were working a "second job." The "relief" rate for such shirts was between $9 and $10 per hour. ECF Nos. 201-5 ¶ 6-7; 192-6 at 25; 192-7 at 32; 72-11; 72-16.

Payroll records reflect that counselors and coordinators regularly worked more than 40 hours per week. ECF Nos. 72-15; 72-16. Thus, say Plaintiffs, the "relief" rate system was used to deny counselors the overtime required by Maryland law. ECF No. 201-5, ¶ 6-7. FCI does not

5

dispute that the relief pay system resulted in underpaying counselors. Instead, Defendants claim that counselors have now been reimbursed for the pay differential.

Payroll records also reflect that from October 2015 to June 2016, Defendants paid employees who earned minimum-wage $9.00 per hour, a rate below the applicable minimum wage for Montgomery and Prince George's counties. ECF No. 201-12. The minimum wage in both counties changed in October 2015 and FCI claims they were not immediately notified of the change by the company's payroll contractor or the State of Maryland. ECF 72-5 at 134-37. After this litigation began, FCI notified certain counselors of the error and made full repayments to the employees in following paychecks. *Id.*; ECF Nos. 72-5 at 137-38; 201-1 at 30. Plaintiffs challenge the admissibility and reliability of this evidence, and in any event, argue that the repayment does not bar the counselors' claims. ECF No. 207 at 26-28.

With these facts in mind, the Court turns to the parties' contentions.

### III.    Plaintiffs' Motion to Substitute

Plaintiff Jennifer Bumbray died on March 3, 2016, nearly a year before this litigation began. ECF Nos. 201-18, 201-19. Yet mysteriously, an opt-in form purportedly bearing Bumbray's signature was filed with this Court on June 13, 2018. ECF No. 97. On August 13, 2019, Plaintiffs notified the Court of Bumbray's death, but then clarified that they had just learned of her death. ECF Nos. 183; 184. Plaintiffs now seek to substitute Earl Brooks, Bumbray's husband, who is the personal representative of her estate. ECF No. 211. Defendants vigorously oppose the motion and ask that this Court grant judgment in their favor on Bumbray's claims. ECF No. 201-1 at 47-49; ECF No. 214. For the following reasons, the Court denies Plaintiffs' motion and grants Defendants' requested relief.

Rule 25(a) of the Federal Rules of Civil Procedure permits substitution if "a party dies and the claim is not extinguished," and upon motion filed "within 90 days after service of a statement noting the death." Fed. R. Civ. P. 25(a). But no credible evidence exists that Bumbray ever became a proper party to the suit. Indeed, she was dead at the time that this Court received an evidently forged opt-in notice purporting to be signed by Bumbray herself. That the Plaintiffs persist in seeking substitution when they should be offering this Court a proper explanation for not withdrawing, or offering further evidence to explain the source of the opt-out form, is deeply troubling. Because Bumbray could not have joined this action, Defendants' motion for judgment in their favor as to Bumbray is granted and Plaintiffs' substitution motion is denied as moot.

## IV. Cross Motions for Summary Judgment

### A.   Standard of Review

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In responding to a proper motion for summary judgment," the opposing party "must present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004), aff'd sub nom. *Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322–23). Genuine disputes of material

fact are not created "through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).  Where a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"Where, as here, cross motions for summary judgment are filed, a court must 'evaluate each party's motion on its own merits, taking care [in each instance] to draw all reasonable inferences against the party whose motion is under consideration.'"  *Snyder ex rel. Snyder v. Montgomery Cty. Pub. Sch.*, No. DKC 2008-1757, 2009 WL 3246579, at *5 (D. Md. Sept. 29, 2009) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).  The Court must deny both motions if it finds a genuine issue of material fact precludes resolution, "[b]ut if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2720 (4th ed. 2020).

### B.      Plaintiffs' Motion - Overtime Claims

The coordinators argue that summary judgment in their favor is warranted on their FLSA and state law overtime claims.  ECF No. 192-1 at 16-18.  Defendants respond that summary judgment should be denied because a reasonable juror could conclude the coordinators are exempt from the FLSA and companion state law claims.  Defendants are correct.

For purposes of this motion, the FLSA and state law analogs adopt the same overtime standards, and so the Court will address the claims together.  *Schilling v. Schmidt Baking Company, Inc.*, 876 F.3d 596, 604 (4th Circ. 2017).  The FLSA requires employers to pay non-exempt employees overtime pay of at least one and one-half times the regular wage for hours

worked that exceed 40 hours per week. 29 U.S.C. § 207(a). Employees who work "in a bona fide executive, administrative, or professional capacity," however, are exempt from wage and hour requirements. 29 U.S.C. § 213(a)(1); ECF No. 201-5, ¶ 6-7. An employer bears the burden of proving by clear and convincing evidence that an employee is exempt. *Williams v. GenEx Svcs. LLC*, 809 F.3d 103, 109 (4th Cir. 2015). Implementing regulations further direct that exempt employees must be "compensated on a salary basis at a rate of no less than $455 per week," and their "primary dut[ies]" must be related to "management or general business operations" and "the exercise of discretion and independent judgment" on matters of significance. 29 C.F.R. § 541.200(a); Md. Code Ann. Lab. & Empl. § 3–403(1) (including the administrative exemption in the MWHL). An employee is paid on a "salary basis" if the employee receives "a predetermined amount" each pay period which is "not subject to reduction because of variation in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). Barring exceptions enumerated in the regulations, an employee "must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." 29 C.F.R. § 541.602 (a)(1). Partial day deductions may preclude an employee from being classified as exempt from overtime regulations. *Kim v. Confidential Studio, Inc.,* No. CV PWG-15-410, 2016 WL 4733282, at *2 (D. Md. Sept. 12, 2016).

As for the requisite supervisory responsibilities, an employee is exempt if she has: (1) a "primary duty" of "management of the enterprise in which the employee is employed[;]" (2) "customarily and regularly direct[ ] the work of two or more other employees;" and (3) "ha[s] the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(2)-(4)). *See id.* at §§ 541.102-541.105. "The

term 'primary duty' means the principal, main, major or most important duty that the employee performs." *Id.* § 541.700(a).  This is a fact specific inquiry "with the major emphasis on the character of the employee's job as a whole." *Id.* § 541.700(a).

Defendants have generated sufficient evidence to reach the jury on whether the residential coordinators were exempt from the relevant wage and hour statutes.  Personnel forms reflect that the coordinators received an annual salary of $40,000.  ECF No. 201-5 at Ex. 4A - 4D.  Further, credible evidence demonstrates that they were tasked with supervising, training and evaluating the performance of "all residential staff," and that they were primarily responsible for "residential program oversight."  ECF No. 201-5 at Ex. A: *see also* ECF No. 201-5 at ¶ 9.  The residential coordinators also corroborated that they bore the responsibility for creating the work schedules for the counselors.  ECF Nos. 192-5, at 23, 88; 192-8 at 9.  From this, a reasonable juror could credit that the residential coordinators are exempt under the FLSA and state law analogous claims.  Summary judgment as to the coordinators is thus denied.

Relatedly, Plaintiffs maintain that both subclasses (coordinators and counselors) are entitled to judgment on their MWPCL overtime claim because Defendants promised to pay them overtime at the FLSA rate.  ECF No. 17-18.  As a threshold matter, the Court cannot agree with the coordinators because if the jury credits that coordinators are exempt from the reach of the wage and hour statutes, then they are not entitled to overtime as a matter of law.  However, if the jury finds that coordinators are hourly employees like counselors, the "promise to pay" claim must also be put to the jury.

The MWPCL entitles an employee to recovery of unpaid wages if two weeks "have elapsed from the date on which the employer is required to have paid the wages."  Md. Code Ann., Lab. & Empl. § 3-507.2(a).  The MWPCL "does not focus on 'the amount of wages

10

payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment.'" *Gregori v. Mkt. St. Mgmt., LLC*, No. ELH-16-3853, 2018 WL 4679734, at *5 (D. Md. Sept. 28, 2018) (quoting *Friolo v. Frankel*, 373 Md. 501, 513 (2003)). The MWPCL defines "wages" as "all compensation that is due to an employee for employment," and includes in that term "overtime wages" and "any other remuneration promised for service." Md. Code Ann., Lab. & Empl. § 3-501(c). Pertinent to this argument, the Fourth Circuit has made clear that "for a form of compensation to constitute 'wages' under the [MWPCL] . . . the employee must have been *promised* the particular form of compensation as remuneration for his labor." *Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 418 (4th Cir. 2005) (emphasis in original).

In support of the claim, Plaintiffs point to FCI's employee handbook which expressly states that "[n]on-exempt employees (i.e. hourly employees and salaried non-exempt employees) will be paid overtime, at a rate of 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 hours in the employee's work week." ECF No. 90-1 at 16. FCI employees are required to sign the last page of the handbook, acknowledging they "accept the terms" therein. *Id.* at 30. However, a separate "Acknowledgment of Receipt of Employee Handbook" requires an employee to attest that she "understand[s] that [the handbook] is neither a contract of employment nor a legally-binding agreement." ECF No. 90-1 at 30. This Acknowledgment also explicitly states that the handbook "should not be construed as a contract or employee agreement." *Id.*

In essence, the parties each point to the same set of employment documents and from them argue the existence—or non-existence—of a promise to pay overtime. The evidence, when viewed in the light most favorably to the non-movant Defendants, simply does not unequivocally

11

determine that FCI promised to pay overtime sufficient to establish an MWHL "promise to pay" violation. The trier of fact must decide who has the better argument. Summary judgment on this count is denied.

As to the MWHL overtime claim, Defendants also urge the Court that because FCI is a residential care facility, the MWHL limits liability to hours worked in excess of 48 in any given week. ECF No. 201-1 at 27-32. The MWHL imports the same entitlement to overtime pay for non-exempt workers as the FLSA. *See* Md. Code Ann., Lab. & Empl. § 3-415(a), *Turner v. Human Genome Science, Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003). However, for institutions that are not hospitals and are "engaged primarily in the care of residential clients who "are aged, intellectually disabled, or sick or have a mental disorder," the MWHL limits overtime to any hours worked in excess of 48 for any given week. Md. Code Ann. Lab. & Empl. § 3-420. *Id.*

Plaintiffs do not contest that FCI qualifies as such an institution. Instead, they argue that Defendants "waived" any argument to this effect because they had taken a contrary position earlier in the litigation. ECF Nos. 192-1 at 18; 67 at 7-8. Plaintiffs provide no authority for this "waiver" argument, nor can the Court discern any.[2] Rather, the record indisputably reflects that FCI is a residential care facility that renders it entitled to invoke the 48-hour rule. Thus, the Court grants Defendants' motion and finds that liability as to overtime claims under the MWHL will be limited to any hours worked in excess of 48 in any given week.

C.  **Plaintiff Counselors' Minimum Wage Claims**

Plaintiff counselors next urge the Court to grant summary judgment on their minimum wage claims under the FLSA and MWPCL. "The FLSA requires that employers pay nonexempt

---

[2] Ironically, Plaintiffs argued vigorously at the class certification stage that FCI operates such a residential care facility sufficient to trigger the application of the wage and hour laws in the first instance. ECF No. 67-1 at 6-7.

12

employees at least the federal minimum wage." *Quickley v. Univ. of Md. Med. Sys. Corp.*, No. 12–231, 2012 WL 4069757, at *4 (D. Md. Sept. 14, 2012); *see also* 29 U.S.C. § 206(a)(1). Where a local minimum wage is higher than the FLSA, "the regular rate of the employee . . . cannot be lower than such applicable minimum." 29 C.F.R. § 778.5. "The MWHL is the 'state parallel' to the FLSA, and the requirements for pleading a claim under the MWHL 'mirror those of the federal law.'" *Quickley*, 2012 WL 4069757, at *6 (quoting *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012)); *see also* Md. Code Ann., Lab. & Empl. § 3–413(b).[3] The MWHL provides the minimum wage standard, and the MWPCL requires employers to pay an employee the full wages owed in a timely manner. *See Chavez v. Besie's Corp.,* No. GJH-14-1338, 2014 WL 5298032, at *3 (D. Md. Oct. 10, 2014); *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 652–53 (Md. Ct. App. 2014) (The MWHL and MWPC provide two avenues for employees to recover unpaid wages).

It is undisputed that Defendants failed to pay counselors minimum wage at least during the period from October 2015 to June 2016. ECF No. 72-17. Defendants marshal no evidence otherwise. Thus, for this timeframe, summary judgment on the minimum wage claims as to the counselors is granted.

Defendants maintain, however, that for a subset of the Plaintiff counselors, FCI did "reimburse" the pay differential as soon as they realized they had failed to pay the proper minimum wage due to a claimed inadvertence. ECF No. 72-5 at 134, 137-38; 201-1 at 9. So, say Defendants, for those counselors who have been fully reimbursed, their claims are now

---

[3] The minimum wage in Montgomery County was $9.55/hr. from October 1, 2015, through June 30, 2016, $10.75/hr. from July 1, 2016, through June 30, 2017, $11.50 from July 1, 2017, through June 30, 2018, and $12.25 per hour from July 1, 2018 through June 30, 2019. *See Montgomery Cty. Code* § 27-68; 70A. The minimum wage in Prince George's County was $9.55 per hour from October 1, 2015 through September 30, 2016, $10.75 per hour from October 1, 2016 through September 30, 2017, and $11.50 per hour from October 1, 2017. *See* Prince George's Cnty. Code, Labor Code, § 13A-117.

"moot" and judgment should be granted in Defendants' favor as to those Plaintiffs. ECF No. 201-1 at 29-32. The Court disagrees. The mere "settling up" of the pay differential does not necessarily extinguish the Plaintiffs' claims. Plaintiffs maintain that FCI's violations were willful. If they convince the jury of this, they will be entitled to enhanced damages in excess of the wage itself. [4] Accordingly, Defendants' argument fails. Summary judgment is granted as to the Plaintiffs' minimum wage claims for the time period discussed above.

### D.     Cross Motions on Willfulness of the FLSA violations

Lastly, the parties cross move as to whether Defendants' FLSA violations were willful, thus triggering an extended three-year limitations period available under the FLSA. *See* 29 U.S.C. § 255(a). Defendants maintain any FLSA violations were indisputably the result of "mere inadvertence" and thus was a good faith mistake. ECF No. 201-1 at 38-43. Plaintiffs on the other hand argue the evidence unequivocally proves otherwise.

An employer acts willfully when it "'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Aviles-Cervantes v. Outside Unlimited, Inc.*, 276 F. Supp. 3d 480, 491 (D. Md. 2017) (internal quotation marks omitted). *See* 29 C.F.R. § 578.3(c)(3) (an employer will be deemed to have recklessly disregarded the statute if it "should have inquired further into whether its conduct was in compliance with the Act and failed to make adequate further inquiry"). "Mere negligence on the part of the employer with regard to compliance with the FLSA is not sufficient to prove willfulness." *Gionfriddo v. Jason Zink, LLC*, 769 F.Supp.2d 880, 890 (D.Md.2011) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)). Plaintiffs bear the burden of proving willfulness. *Butler v. DirectSAT USA,*

---

[4] Plaintiffs' ask the Court to strike FCI's letters to the employees which reflect the wage repayments as a sanction for failing to produce them discovery. ECF No. 207. Because the Court is denying Defendants' dispositive relief, the Court will revisit what if any sanction is appropriate in advance of trial.

*LLC*, 55 F. Supp. 3d 793, 802 (D. Md. 2011) (citing *Desmond v. PNGI Charles Town Gaming, L.L.C,* 630 F.3d 351, 358 (4th Circ. 2011). "All of the facts and circumstances surrounding the violation shall be taken into account in determining whether a violation was willful." 29 C.F.R. § 578.3(c)(1).

It is undisputed that between October 2015 and June 2016, Defendants failed to pay some employees the applicable minimum wage in violation of the FLSA. ECF No. 201-12; *see* also ECF No. 72-17. Similarly, if the jury credits that the residential coordinators were not exempt under the FLSA, then Defendants' "relief pay" system deprived them of overtime pay. ECF Nos. 201-5 at ¶6; 206 at 30; 72-15, 72-16. Defendants assert, however, that they had a "good-faith" basis for believing their "relief pay" system complied with the FLSA. *See Mould v. NJG Food Service, Inc.*, 37 F. Supp. 3d 762, 772 (D. Md. 2014) (quoting *Richland Shoe*, 486 U.S. at 135, n.13)( "[a]n employer's violation of the FLSA is not willful if it is the result of a 'completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects.'").

However, FCI's own employee handbook belies this contention. The handbook plainly states that FCI compensates overtime at one-and-a-half times the hourly rate for all hours worked in excess of 40 hours in the work week. ECF No. 90-1 at 16. Accordingly, a reasonable juror could conclude that the "relief pay" system amounted to a purposeful end run around what FCI knew to be the proper overtime rate, as published in the handbook. Because the evidence in this respect diverges, the Court cannot resolve this dispute on summary judgment.

Similarly, as to the rate of pay applicable to residential coordinators, FCI defends against their FLSA claims by contending that the coordinators were salaried employees "exempt" under the FLSA. But record evidence also demonstrates that several plaintiffs had complained that

while they were "quoted" a salary, they were being paid an hourly wage. ECF No. 192-6 at 28-29; 192-7 at 26. From these complaints, a rational trier of fact could not only reject FCI's defense but find that FCI had been placed on notice of the violation and chose to ignore their employees' legitimate complaints. This evidence provides sufficient grounds for Plaintiffs to argue the "relief pay" system was a calculated bait-and-switch, thus entitling them to compensation for a three-year, as opposed to two-year violations period. Viewing this evidence in the light most favorable to Defendants, this evidence is sufficient for the matter to proceed to trial.

The parties similarly dispute entitlement to liquidated damages. ECF No. 192-1 at 28-29. An employer may avoid liquidated damages if it acted in "good faith" and had "reasonable grounds for believing" its plan did not violate the FLSA. 29 U.S.C. § 260; *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Circ. 2011). For the same reasons, and based on the same evidence, the Court denies the cross motions as to liquidated damages.[5]

## V.    Conclusion

For the foregoing reasons, Plaintiffs' Motion for Substitution is DENIED, Plaintiffs' Motion for Summary Judgment is GRANTED in part and DENIED in part, and Defendants' Motion for Partial Summary Judgment is GRANTED in part and DENIED in part. A separate Order follows.

| 9/23/20 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |

---

[5] As to treble damages under the MWPCL, "[p]laintiffs are entitled to recover liquidated damages under the FLSA or treble damages under the Maryland Wage Payment and Collection Law, but not both." *Quiroz v. Wilhelm Com. Builders, Inc.*, No. WGC-10-2016, 2011 WL 5826677, at *2 (D. Md. Nov. 17, 2011). In light of the Court's decision on liquidated damages, the question of treble damages is premature.